UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**04-22395**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

YUBY RAMIREZ,

    Defendant.

_____/

CASE NO.
(Related criminal case – 00-Cr-376-Lenard)

CIVIL FILED

MAGISTRATE JUDGE
SIMONTON



## YUBY RAMIREZ'S MOTION TO VACATE, SET ASIDE, AND CORRECT SENTENCE AND INCORPORATED MEMORANDUM OF LAW

Yuby Ramirez, through counsel, files this memorandum of law in support of her 2255 petition and states:

### INTRODUCTION

There is no question that Yuby Ramirez's attorneys enjoy fine reputations. But even the best make mistakes. And the mistakes that her lawyers made in this case cost Ms. Ramirez her life.

The central mistake they made revolved around a misunderstanding of the charging document and what this Court and the Eleventh Circuit described as the plain language of Federal Rule of Criminal Procedure 12. Because of this misconception, Ms. Ramirez's lawyers ignored generous plea offers and mistakenly advised Ms. Ramirez that she was likely facing no more than 10 years in prison and possibly no more than 3 years in prison (when she was really facing life), all because they wanted to raise a doomed statute of limitations defense, which they ended up waiving by raising it after trial had already started. Unfortunately, her lawyers became enamored with this misguided

HIRSCH & MARKUS LLP

legal argument believing it to be unbeatable and in so believing, put aside their client's best interest in resolving the case to the government offer of a plea to a maximum of five years.[1] Although she was facing life in prison, Ms. Ramirez's lawyers -- based on their unreasonable reading of law -- bet on Ms. Ramirez's life and lost.

## FACTS

The Eleventh Circuit Court of Appeals summarized the facts of this case as follows:

The defendants were involved in a conspiracy to murder various witnesses who were scheduled to testify against Salvador Magluta and Augusto Falcon, alleged drug kingpins in South Florida.[2] As a result of that conspiracy, three potential witnesses were murdered, and various attempts were made to kill others.

Consequently, on May 11, 2000, a grand jury indicted the defendants, among others, for witness tampering. The four-count indictment charged Lezcano with three counts of witness tampering, Castro with two counts of witness tampering, and Ramirez with one count of witness tampering.[3] The case proceeded to trial, and, after opening statements, the defendants moved for a judgment of acquittal, asserting that the

---

[1]Shortly before trial, the government changed its offer to ten years because of the work they had to put in preparing for trial.

[2]"Magluta and Falcon were acquitted of the drug charges for which they originally were indicted, but they subsequently were charged with various counts of witness tampering as a result of these murders and other acts that they allegedly committed." *Id.* at n.3 As an aside, both Magluta and Falcon received less time than the life sentence imposed on Ms. Ramirez. In fact, Falcon received a 20 year sentence. It is quite possible that both are looking at substantial reductions in their sentences due to the recent decision of *Blakely v. Washington.*

[3]"Count One of the indictment charges that Lezcano and a coconspirator did knowingly, intentionally and willfully aid, abet, counsel, command, induce and procure the killing of Juan Acosta, Esq., by causing him to be shot by paid assassins, with the intent to prevent Juan Acosta, Esq., from testifying before a federal grand jury. Count Two charges that Lezcano, Castro, and others did knowingly, intentionally and willfully kill Luis Escobedo ... with the intent to prevent Luis Escobedo ... from communicating to a law enforcement officer or a judge of the United States information relating to the commission of federal offenses by Salvador Magluta ... and Augusto Falcon. Count Three contains the same language as Count Two, but charges the defendants and others with the killing of Bernardo Gonzalez." *Id.* at n.4 (internal quotation omitted).

indictment was insufficient because it failed to charge the necessary elements of first degree murder, "malice aforethought" and "premeditation." Hence, they argued that they were entitled to a judgment of acquittal, because the indictment was time-barred. The district court, construing the motion as a Federal Rule of Criminal Procedure 12(b)(2) motion, held that their motion was untimely. Alternatively, it held that, under a liberal construction of the indictment, those elements were charged. It therefore denied the defendants' motion and instructed the jury regarding those elements. This appeal followed.

\*\*\*

The defendants assert that the indictment was insufficient, because the necessary elements of first degree murder, "malice aforethought" and "premeditation," were not charged. As a result, they contend that the district court should have granted their motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29, because, without those elements, the indictment was time-barred as it failed to charge a capital crime.[4] *See* 18 U.S.C. § 3282 (providing that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed").

The Eleventh Circuit quickly dismissed this unreasonable argument holding: "Although the defendants raised their statute of limitations defense in a Rule 29 motion and not in a Rule 12(b) motion, we believe that their defense merely [wa]s a challenge based upon the sufficiency of the indictment that should have been raised before trial." It so held because "Rule 12(b) clearly provides that "[d]efenses and objections based on defects in the indictment" must be raised before trial." *Id.* (emphasis added). The Eleventh Circuit condemned the actions taken by counsel in this case as an unreasonable strategy: "Nothing in this case warranted waiting until after opening statements to raise this defense; the defendants merely waited to gain a strategic advantage by raising the defense after

---

[4]"Indeed, June 22, 1993 is the date on which the last crime charged with respect to the defendants was committed. As the indictment was not returned until May 11, 2000, more than five years after the date on which the crimes charged were committed, it would be time-barred unless the crimes charged were capital crimes. *See* 18 U.S.C. § 3282." *Id.* at n. 5.

jeopardy attached. This tactic is precisely what Rule 12 was designed to prevent. *See United States v. Oldfield,* 859 F.2d 392, 397 (6th Cir.1988)." (Footnotes omitted). Quoting the Sixth Circuit, the court explained that Rule 12

> sharply restricts the defense tactic of 'sandbagging' that was available in many jurisdictions under common law pleading. Recognizing that there was a defect in the pleading, counsel would often forego raising that defect before trial, when a successful objection would merely result in an amendment of the pleading. If the trial ended in a conviction, he could then raise the defect on a motion in arrest of judgment and obtain a new trial. Federal Rule 12 eliminated this tactic as to all objections except the failure to show jurisdiction or to charge an offense. *Id.* (internal quotation marks omitted). As a result, the defendants waived their defense by failing to raise it before trial.

*Id.* at 1228.

And while true that "Rule 12 provides that the waived issue can be considered upon a showing of cause, Fed.R.Crim.P. 12(f), there [wa]s no good cause in this case." *Id.* at n.8 (emphasis added). We attach the Court's opinion for convenience as Exhibit A.

Despite the clear language of Rule 12 and the case law interpreting its "plain language" to require the filing of such a motion pre-trial, Ms. Ramirez's lawyers misread its mandate to allow the filing of their motion after the jury was sworn. It is this error that cost Ms. Ramirez her life.

Before trial, government lawyers had made two very reasonable offers to Ms. Ramirez that were largely ignored by her lawyers because of their perception that their statute of limitations motion was unbeatable and based on the mistaken belief that the statutory maximum was three years. Ms. Ramirez's lawyers rejected the five year offer, falsely and unreasonably believing that their statute of limitations motion could not lose and believing that even if it did, the maximum their client would receive would be three or ten years. For these propositions, the Court need not take the word

of undersigned counsel or even the word of Ms. Ramirez. Instead, the attached affidavits of Ms. Ramirez's lawyers demonstrate these facts.

## ARGUMENT

I. **Ms. Ramirez received ineffective assistance of counsel based on her lawyers' unreasonable statute of limitations defense.**

*A.    The law*

In *Strickland v. Washington*, the Supreme Court established a two-part test to show ineffective assistance that violates the Sixth Amendment right to counsel: (1) "the defendant must show that counsel's performance was deficient," defined as "representation [that] fell below an objective standard of reasonableness," and (2) "the defendant must show that the deficient performance prejudiced the defense" by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 687-88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"[I]t is sufficient that a petitioner must show only a reasonable probability that the outcome would have been different; he 'need not show that counsel's deficient conduct more likely than not altered the outcome in the case.'" *Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir.2002) (quoting *Strickland*, 466 U.S. at 693); *see DeLuca v. Lord*, 77 F.3d 578, 590 (2d Cir.1996) ("The *Strickland* test does not require certainty that the result would have been different."). "When evaluating this probability, 'a court hearing an ineffectiveness claim must consider the totality of the evidence.'" *Brownlee*, 306 F.3d at 1060 (quoting *Strickland*, 466 U.S. at 695). "The petitioner bears

the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001). Here, Ms. Ramirez can meet both standards.

> B.  *It was unreasonable to attempt to sandbag the government with the statute of limitations defense after the jury was sworn.*

The Eleventh Circuit described the defense decision to wait until after the jury was sworn to raise the statute of limitations defense as "clearly" contrary to plain language of Rule 12. *Ramirez*, 324 F.3d at 1227. The Court also explained that the lawyers had "no good cause in this case" for waiting. *Id.* at n.8; *see also id.* at 1228 ("Nothing in this case warranted waiting until after opening statements to raise this defense."). According to the Eleventh Circuit, "the statute of limitations defense was clear on the face of the indictment." *Id.* at n.9. It thus found that the lawyers had bungled and waived the argument. There can be no question then "that counsels' performance was deficient," because the Eleventh Circuit's opinion makes quite clear that "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). The question then is prejudice, which as explained below is easily met.

> C.  *Ms. Ramirez was prejudiced because her lawyers convinced her to reject reasonable plea offers based on the unreasonable perception that their motion to dismiss was unbeatable.*

Ms. Ramirez's lawyers were ineffective and unreasonable in not counseling her to plead guilty and accept either of the two government offers based on their incorrect understanding of clearly established law. The law in that regard is relatively straightforward.

There is no question that the decision of whether to plead guilty or to proceed to trial must

be an informed, voluntary and intelligent decision. And counsel has an obligation to aid a client in making that decision. *United States v. Grammas*, 2004 WL 1146382 (5th Cir. May 21, 2004) ("[W]e have described that [Strickland] standard as requiring that counsel 'research relevant facts and law, or make an informed decision that certain avenues will not be fruitful.'"). Counsel has an obligation to represent a defendant effectively in plea discussions and to keep his client informed of pertinent plea and sentencing matters. *See Beckham v. Wainwright*, 639 F.2d 262, 265 (11th Cir. 1981) (ineffective assistance of counsel to fail to accurately convey offer); *Finch v. Vaughn*, 67 F.3d 909, 916-17 (11th Cir. 1995) (defendant "entitled to rely" on counsel for advice on crucial issue of whether to plead guilty or proceed to trial); *Williams v. Taylor*, 120 S.Ct. 1495, 1513 (2000) (requiring "straightforward application of *Strickland* when counsel's ineffectiveness deprives defendant of a substantive or procedural right to which the law entitles him").

It is beyond cavil that counsel can be ineffective for advising a client to go to trial instead of pleading guilty. In *Tennessee v. Turner*, 858 F.2d 1201, (6th Cir. 1988), rev'd and remanded on other grounds, 492 U.S.902 (1999), the Sixth Circuit held that "'an incompetently counseled decision to go to trial appears to fall within the range of protection appropriately provided by the Sixth Amendment.'" *Id.* at 1205. Similarly, in *United States v. Day*, 969 F.2d 39, 42-43 (3d Cir. 1992), the Third Circuit held that failure to advise regarding the benefits of accepting a guilty plea offer in light of potential sentencing exposure and the strength of the government's case and instead counseling the defendant to go to trial constituted ineffective assistance of counsel. *Accord Johnson v. Duckworth*, 793 F.2d 898, 900-902 (7th Cir. 1986) (criminal defendant has right to effective assistance of counsel in deciding whether or not to accept plea offer); *see also United States v.*

*Ramsey*, F. Supp. 2d , 2004 WL 1497890 (D.D.C. July 1, 2004) (granting habeas relief where defense counsel advised client to go to trial in an "unwinnable"case).

The decision regarding whether to plead "is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770 (1970)); *cf. Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that, in the plea context, a habeas petitioner establishes ineffective assistance of counsel by demonstrating that counsel's advice and performance fell below an objective standard of reasonableness, based upon which he pled guilty). For a plea or trial decision to "represent an informed choice" so that it is constitutionally "knowing and voluntary," defendant's "[c]ounsel must be familiar with the facts and the law in order to advise the defendant of the options available." *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir.1983). "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis . . . as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment." *Hill*, 474 U.S. at 62 (White, J., concurring) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). *See also Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (holding that under the *Strickland* standard, as interpreted by the Supreme Court in *Hill v. Lockhart*, 474 U.S. 52 (1985), "[i]t is easier to show prejudice [regarding the decision to plead guilty] because the claimant need only show a reasonable probability that he would have pleaded differently"); *Lynce v. Mathis*, 117 S.Ct. 891, 898 (1997) (A "prisoner's eligibility for reduced imprisonment is a *significant factor* entering into . . . the defendant's decision

to plea bargain") (emphasis added); *Yordan v. Dugger*, 909 F.2d 474, 478 (11th Cir. 1990) (Sixth Amendment violation where counsel misleads a defendant concerning his eligibility for parole in advising a defendant whether to enter a guilty plea; defendant entitled to evidentiary hearing on claim); *Slicker v. Wainwright*, 809 F.2d 768, 769 (11th Cir. 1987) (attorney's misrepresentation to defendant regarding merits of plea may constitute ineffective assistance of counsel; reversing denial of evidentiary hearing).

That is exactly what happened here. Ms. Ramirez's lawyers advised her to reject the plea offers for two reasons.

First, they told her that she had an absolute winner argument and that she should reject the government plea offers.[5] The lawyers explained that the statute of limitations argument could be raised after the jury was sworn and that the government would not be able to overcome this legal argument. Accordingly, the lawyers told Ms. Ramirez to reject the plea offers. As explained by this Court and the Court of Appeals, this argument was not supported by the law and the plain language of Rule 12.[6] It was this misreading of applicable law that cost Ms. Ramirez her life instead of a plea to five years.

---

[5] It is worth noting that Ms. Ramirez (at the time of the events, a 21 year old mother of two) is not a United States citizen, does not speak English fluently and is not familiar with the United States criminal justice system (she has no prior convictions). She relied entirely on the advice her lawyers gave to her (in English) without question.

[6] Not only was the argument waived as explained by the Eleventh Circuit, but waiting until after the jury was sworn may not have precluded the government from re-prosecuting. *See United States v. Kehoe*, 516 F.2d 78 (5th Cir. 1975). In other words, counsel was ineffective for adopting a no-win strategy.

Second, Ms. Ramirez was also given incorrect advice as to the possible penalties she was facing. Her lawyers told her that because of the way the indictment was charged, that she could not be sentenced to life even if she lost the trial. Her lawyers told her that worst case if she lost the trial was ten years. In other words, Ms. Ramirez's lawyers told her to reject the plea because it wasn't offering her anything – if she lost the trial, she would be sentenced to no more than ten years and possibly three years. This crucial advice was dead wrong, and it cost Ms. Ramirez the rest of her life.

A good example of ineffective counsel in this context is seen in *Finch v. Vaughn*, 67 F.3d 909 (11th Cir. 1995), where in exchange for pleading guilty on the morning of his trial, Finch understood from his lawyer that his state term of imprisonment would be concurrent with the balance of his federal sentence. This was his "inducement" for pleading guilty. But his lawyer was wrong. Consequently, his lawyer's plea negotiations and advice to Finch concerning pleading guilty constituted ineffective assistance of counsel. "Because the record supports Finch's contention throughout his state and federal habeas proceedings that he was induced to plead guilty by his counsel's erroneous advice that the plea bargain would enable him to serve his federal and state sentences concurrently, we conclude that [his lawyer] provided ineffective assistance of counsel by misinforming Finch concerning the essence of his decision to plead guilty on a basic principle of dual sovereignty and established federal policy."

Similarly here, Ms. Ramirez was misinformed as to the consequences of the decision to reject the plea offer and was induced to go to trial. If correctly informed as to the law and facts, Ms. Ramirez would have jumped at the opportunity to plead to either five or ten years. She didn't

because of the misrepresentation regarding the viability of the statute of limitations defense and regarding her maximum exposure. And we have not only presented the word of Ms. Ramirez to this effect, we have presented the word of her lawyers. Pursuant to Rule 8 of the Rules Governing 2255s we submit that this evidence constitutes sufficient cause for a hearing on this matter and we so request one here.

**II.** ***In the alternative, Ms. Ramirez's lawyers were ineffective because they waived the statute of limitations defense as well as forfeiting her constructive amendment claims.***

As explained above, the Eleventh Circuit found that defense counsel waived the statute of limitations defense by raising it after trial, contrary to the dictates of Rule 12. If it had been raised pre-trial, the Court would have been obligated to dismiss the indictment as violative of the statute of limitations, which is clear prejudice.[7] *See, e.g., United States v. Trainor*, 2004 WL 1597877 (11th Cir. July 19, 2004) (affirming dismissal of charges based on statute of limitations raised pre-trial). Unfortunately the defense was waived.[8] *See Ramirez* at Exhibit A.

The grand jury indicted Yuby Ramirez with violating 18 U.S.C. § 1512(a)(1)(C). Because malice is an essential element of any murder and premeditation is an essential element of first degree murder, the indictment charged only a lesser homicide offense. Thus, the grand jury did not charge

---

[7]One cannot assume that the government would have superceded with the elements for a capital crime or that a grand jury would have issued an indictment for such a crime. And even if the government did so decide and the grand jury followed suit, then Ms. Ramirez would have had the benefit of knowing her options regarding plea or trial before the jury was sworn.

[8]Waiving a statute of limitations defense is no different than waiving other Rule 12 defenses, like alibi, insanity, suppression, and so on. No citation is needed for the basic proposition that a lawyer who waives a viable defense under this rule is ineffective.

a capital crime, and it returned this non-capital indictment more than five years after Gonzalez's homicide. Accordingly, the statute of limitations, 18 U.S.C. § 3282, barred prosecution of the offense charged.

Her lawyers waived this strong argument by waiting until after trial to raise it. Had the defense raised this issue *pre*-trial, the result would have different because at the very least Ms. Ramirez would have the benefit of knowing exactly what she was charged with (be it first degree murder or something else) pre-trial. In the best case scenario, the Court would have dismissed the case. Accordingly, Ms. Ramirez suffered prejudice.

In addition, her lawyers were ineffective in waiving her claim that the indictment was constructively amended and that she was improperly tried and sentenced on charges not alleged in the indictment. *See, e.g., Stirone v. United States*, 361 U.S. 212 (1960), *United States v. Cotton*, 122 S. Ct. 1781 (2002); *see also Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court of Appeals did not consider these claims because it said they were waived. That's prototypical ineffectiveness.

## CONCLUSION

Ms. Ramirez's lawyers placed all their chips on a bet with no chance of winning. It put Ms. Ramirez in the worst possible position – she lost her statute of limitations defense, she lost her arguments regarding constructive amendment, she lost out on pleading guilty, she lost her right to have notice of the actual charges against her and she lost the right to know what her statutory maximum punishment was so that she could make an informed decision as to how to resolve the case. Simply put, a no win gambit by her lawyers shouldn't cost her the rest of her life.

WHEREFORE, Ms. Ramirez respectfully requests a hearing on the above-mentioned claims and all other relief the Court deems just.

## VERIFICATION

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___September 13, 2004___          ___Ruby Ramirez___
              (date)                                Signature of Movant

Respectfully submitted,

HIRSCH & MARKUS, LLP

___David Oscar Markus___
David Oscar Markus
Fla. Bar No. 119318
Two Datran Center, Suite 1200
9130 South Dadeland Boulevard
Miami, Florida 33156
Tel: 305-670-0077
Fax: 305-670-7003

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by U.S. mail this __22__ day of __September__, 2004, to: Michael Davis, AUSA, 99 NE 4th Street, Miami, Florida 33130.

___David Oscar Markus___
David Oscar Markus

# EXHIBIT A

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 18, 2003
THOMAS K. KAHN
CLERK

No. 02-10731

D. C. Docket No. 00-00376-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YUBY RAMIREZ,
JAIRO CASTRO, et al.,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Florida

**(March 18, 2003)**

Before MARCUS and WILSON, Circuit Judges, and LIMBAUGH*, District
Judge.

PER CURIAM:

---

*Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of
Missouri, sitting by designation.

Yuby Ramirez, Edward Lezcano, and Jairo Castro (collectively the defendants) appeal the life sentences they received after a jury found them guilty of witness tampering in violation of 18 U.S.C. § 1512(a)(1)(C).[1] They assert that the indictment was time-barred, because it failed to charge a capital crime.[2] Because we find that the defendants waived their right to raise that defense by failing to raise it in a pretrial motion, we affirm.

## BACKGROUND

The defendants were involved in a conspiracy to murder various witnesses who were scheduled to testify against Salvador Magluta and Augusto Falcon, alleged drug kingpins in South Florida.[3] As a result of that conspiracy, three potential witnesses were murdered, and various attempts were made to kill others.

Consequently, on May 11, 2000, a grand jury indicted the defendants, among others, for witness tampering. The four-count indictment charged Lezcano

---

[1] Lezcano also was convicted of witness tampering in violation of § 1512(a)(1)(A).

[2] The defendants also assert that (1) the district court violated their Sixth Amendment rights by limiting the cross-examination of two of the government's witnesses, Phanor Caicedo-Ramos and Juan Carlos Caicedo-Ramos; (2) the district court improperly provided a *Pinkerton v. United States*, 328 U.S. 640 (1946), instruction; and (3) there was insufficient evidence to support their convictions. As we find that those issues lack merit and do not require any discussion, we will not address them herein.

[3] Magluta and Falcon were acquitted of the drug charges for which they originally were indicted, but they subsequently were charged with various counts of witness tampering as a result of these murders and other acts that they allegedly committed.

with three counts of witness tampering, Castro with two counts of witness tampering, and Ramirez with one count of witness tampering.[4] The case proceeded to trial, and, after opening statements, the defendants moved for a judgment of acquittal, asserting that the indictment was insufficient because it failed to charge the necessary elements of first degree murder, "malice aforethought" and "premeditation." Hence, they argued that they were entitled to a judgment of acquittal, because the indictment was time-barred. The district court, construing the motion as a Federal Rule of Criminal Procedure 12(b)(2) motion, held that their motion was untimely. Alternatively, it held that, under a liberal construction of the indictment, those elements were charged. It therefore denied the defendants' motion and instructed the jury regarding those elements. This appeal followed.

## STANDARD OF REVIEW

---

[4]Count One of the indictment charges that Lezcano and a coconspirator "did knowingly, intentionally and willfully aid, abet, counsel, command, induce and procure the killing of Juan Acosta, Esq., by causing him to be shot by paid assassins, with the intent to prevent Juan Acosta, Esq., from testifying before a federal grand jury." Count Two charges that Lezcano, Castro, and others "did knowingly, intentionally and willfully kill Luis Escobedo . . . with the intent to prevent Luis Escobedo
. . . from communicating to a law enforcement officer or a judge of the United States information relating to the commission of federal offenses by Salvador Magluta . . . and Augusto Falcon." Count Three contains the same language as Count Two, but charges the defendants and others with the killing of Bernardo Gonzalez.

We review the sufficiency of the indictment de novo. *United States v. Pendergraft*, 297 F.3d 1198, 1204 (11th Cir. 2002). We review the district court's denial of a motion as untimely under Rule 12(f) for abuse of discretion. *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990).

## DISCUSSION

The defendants assert that the indictment was insufficient, because the necessary elements of first degree murder, "malice aforethought" and "premeditation," were not charged. As a result, they contend that the district court should have granted their motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29, because, without those elements, the indictment was time-barred as it failed to charge a capital crime.[5] *See* 18 U.S.C. § 3282 (providing that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed").

Rule 12 provides that

---

[5]Indeed, June 22, 1993 is the date on which the last crime charged with respect to the defendants was committed. As the indictment was not returned until May 11, 2000, more than five years after the date on which the crimes charged were committed, it would be time-barred unless the crimes charged were capital crimes. *See* 18 U.S.C. § 3282.

4

> [a]ny defense, objection, or request which is capable of determination
> without the trial of the general issue may be raised before trial by
> motion. . . . The following *must* be raised prior to trial:
>
> . . . .
>
> (2) *Defenses and objections based on defects in the indictment .
> . .* (other than that it fails to show jurisdiction in the court or to charge
> an offense which objections shall be noticed by the court at any time
> during the pendency of the proceedings).

Fed. R. Crim. P. 12(b)(2) (emphasis added). Rule 12 also provides that the

"[f]ailure by a party to raise defenses or objections or to make requests which

must be made prior to trial . . . shall constitute [a] waiver thereof." *Id.* R. 12(f).

Rule 12(b)(2) clearly provides that "[d]efenses and objections based on

defects in the indictment" must be raised before trial. *Id.* R. 12(b)(2). Although

the defendants raised their statute of limitations defense in a Rule 29 motion and

not in a Rule 12(b) motion, we believe that their defense merely is a challenge

based upon the sufficiency of the indictment that should have been raised before

trial.[6] As they assert a defense "based on defects in the indictment" that was clear

---

[6]The defendants assert that the Advisory Committee Notes to Rule 12 make clear that
they had the option of bringing their motion before trial, but that they were not required to do so,
because a statute of limitations defense is a matter that can be brought in a permissive pretrial
motion under Rule 12(b). Fed. R. Crim. P. 12 advisory committee notes (providing that
permissive pretrial motions "include such matters as . . . statute of limitations"). As noted above,
however, the defendants' statute of limitations defense is a defense based upon the sufficiency of
the indictment. As the plain language of Rule 12 dictates that defenses based upon the
sufficiency of the indictment must be brought before trial, there is no need to look to the notes.
*See United States v. Vonn*, __ U.S. __, 122 S. Ct. 1043, 1049 n.6 (2002) ("In the absence of a
clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into
the meaning of a rule . . . .").

from the face of the indictment and that does not satisfy any of the exceptions set forth in the Rule,[7] *id.*, they waived this issue by failing to raise it in a pretrial motion, *see United States v. Suescun*, 237 F.3d 1284, 1286–88 (11th Cir.) (holding that "Suescun's challenges . . . were capable of determination without the trial of the general issue" and that "Suescun waived his objection to the validity of the indictment because he did not present it as required by Rule 12(b)"), *cert. denied*, 534 U.S. 863 (2001); *Ward v. United States*, 694 F.2d 654, 659 n.4 (11th Cir. 1982) (noting that failure to challenge the technical sufficiency of the indictment prior to trial constitutes a waiver of that challenge).[8]

---

[7]Neither exception applies in this case. In fact, the defendants concede that they were not alleging that the indictment failed to state an offense. Although Lezcano asserts in his reply brief that the defendants are arguing that the indictment failed to state an offense, the opposite assertion was made before the district court and this Court. As a result, we need not address Lezcano's claim that the indictment failed to state an offense. *See Jackson v. United States*, 976 F.2d 679, 680 n.1 (11th Cir. 1992) (per curiam) (noting that "[a]rguments raised for the first time in a reply brief are not properly before the reviewing court" (internal quotation marks omitted)).

[8]Although Rule 12 provides that the waived issue can be considered upon a showing of cause, Fed. R. Crim. P. 12(f), there is no good cause in this case. As the district court noted,

> [R]ather than file a motion prior to trial, Defendants decided to submit this motion and a lengthy memorandum immediately upon the conclusion of opening statements. Defendants were clearly prepared to file their motion earlier, but decided to withhold it in order to seek a strategic advantage by waiting until jeopardy attached upon the swearing in of the jury. As in *Suescun*, Defendants in this case clearly "had all the information necessary to challenge the [indictment] prior to the date set by the district court for pretrial motions, but did not." Rule 12(b) is designed to prevent precisely such use of belatedly filed motions and, accordingly, mandates that certain motions be filed prior to trial.

Thus, the defendants were unable to show cause to excuse their waiver in this case.

Although we recognize that there may be times when a statute of limitations defense cannot be raised before trial because the development of facts pertaining to that defense is necessary, this is not one of those times. Nothing in this case warranted waiting until after opening statements to raise this defense;[9] the defendants merely waited to gain a strategic advantage by raising the defense after jeopardy attached. This tactic is precisely what Rule 12 was designed to prevent. *See United States v. Oldfield*, 859 F.2d 392, 397 (6th Cir. 1988). As the Sixth Circuit noted, Rule 12

> sharply restricts the defense tactic of 'sandbagging' that was available in many jurisdictions under common law pleading. Recognizing that there was a defect in the pleading, counsel would often forego raising that defect before trial, when a successful objection would merely result in an amendment of the pleading. If the trial ended in a conviction, he could then raise the defect on a motion in arrest of judgment and obtain a new trial. Federal Rule 12 eliminated this tactic as to all objections except the failure to show jurisdiction or to charge an offense.

*Id.* (internal quotation marks omitted). As a result, the defendants waived their defense by failing to raise it before trial.[10]

---

[9]The defendants assert that they could not raise their statute of limitations defense until after opening statements, because they needed the government to concede that the crimes charged were committed more than five years before the indictment was returned. We, however, disagree, because the indictment specifically set forth the dates on which the crimes were committed. Thus, the statute of limitations defense was clear on the face of the indictment.

[10]In light of our holding, we need not address the constructive amendment and sentencing issues that arise from the defendants' arguments regarding the sufficiency of the indictment.

## CONCLUSION

Thus, we hold that when a statute of limitations defense is clear on the face of the indictment and requires no further development of facts at trial, a defendant waives his right to raise that defense by failing to raise it in a pretrial motion. Accordingly, we AFFIRM.

EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


UNITED STATES OF AMERICA,

     Plaintiff,

v.

YUBY RAMIREZ,

     Defendant.

_____/

CASE NO.
(Related criminal case – 00-Cr-376-Lenard)

## AFFIDAVIT OF REUBEN CAMPER CAHN

Affiant Reuben Camper Cahn having first been duly sworn and deposed states as follows:

1.     My name is Reuben Camper Cahn and I swear that the following is true and accurate to the best of my recollection and ability.

2.     I am employed at the Federal Defender's Office in the Southern District of Florida as the Chief Assistant Federal Defender.

3.     I was lead counsel for Yuby Ramirez in the case of *United States of America v. Yuby Ramirez*, 00-376-Cr-Lenard. Then-supervisory Assistant Federal Defender Mary Barzee was my co-counsel.

4.     I believed (as explained in my submissions to various courts) that the indictment did not charge first degree murder and therefore was barred by the statute of limitations.

5.     I told all co-counsel about my (mis)understanding of the indictment and decided that we should all wait until after the jury was sworn to raise this argument. I did not believe we would lose. I explained this to counsel for the other defendants and we all decided to wait until after the

jury was sworn to launch our attack on the indictment. As the Eleventh Circuit explained, this advice was wrong under the law of Rule 12.

6. Before trial, AUSA Alan Kaiser made a written offer of 5 years to Ms. Ramirez. In advising Ms. Ramirez whether she should accept this offer, Mary Barzee and I explained that we expected the statute of limitations defense would be successful. Moreover, we told Ms. Ramirez that even if the district judge denied our motion to dismiss, she was facing a statutory maximum based on the charge of involuntary manslaughter and not first degree murder. Although, Ms. Ramirez is not a native English speaker and was not at that time fluent in English, all but one of these conversations were carried out in English.

7. Based on what we told her, Yuby Ramirez rejected the offer.

8. I believe that I rendered ineffective assistance of counsel to Ms. Ramirez because I misadvised her about the statutory maximum, because I misadvised her concerning plea offers from the government, because I advised her on these complicated legal issues in English, and because I waived her arguments concerning the indictment, statute of limitations, constructive amendment, and sentencing.

FURTHER AFFIANT SAYETH NAUGHT.

Reuben Camper Cahn

BEFORE ME, the undersigned authority, personally appeared, Reuben Camper Cahn to me well known, or who produced _____ as identification, and who acknowledged the foregoing instrument.

WITNESS my hand and official seal on this 1 day of Sept. , 2004.

Notary Public, State of Florida P. Dominguez
My Commission Expires

Commission # DD 068582
Expires Dec. 2, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

Page 2 of 2

# EXHIBIT C

UNITED STATES OF AMERICA,

      Plaintiff,

v.

YUBY RAMIREZ,

      Defendant.

_____/

CASE NO.
(Related criminal case – 00-Cr-376-Lenard)

## INTERVIEW OF MARY R. BARZEE

Judicial ethics prohibit Mary Barzee, a circuit court judge, from submitting an affidavit. We conducted an interview of Judge Barzee and proffer that she would testify to the following facts at an evidentiary hearing on this matter.

1.     Mary Barzee was second chair to Reuben Cahn in the case of *United States of America v. Yuby Ramirez,* 00-376-Cr-Lenard.

3.     During the pendency of this case, Barzee was employed at the Federal Defender's Office as a Supervisory Assistant Federal Defender.

4.     While preparing for trial, Barzee became convinced that the count against Yuby Ramirez did not charge first degree murder and therefore was barred by the statute of limitations.

5.     Reuben Cahn and Barzee conferred with co-counsel on this issue and decided that to wait until after the jury was sworn to raise this argument.

6.     Before trial, AUSA Alan Kaiser made Ms Ramirez a written offer of 5 years. Reuben Cahn and Barzee met with Ms Ramirez and advised her not to accept the offer. She told Barzee her complete trust was with them and that she would do whatever we advised. Cahn and Barzee told her that they believed the statute of limitations defense would not lose. They also advised her that even if the judge denied our motion to dismiss, they thought she could not be sentenced to life in prison. They advised her that she was facing a statutory maximum based on second degree murder at worst and involuntary manslaughter at best.

7.     Based on what Barzee told her, Yuby Ramirez rejected the offer.

8.     Based on the appellate opinions issued in this case, Barzee now believes that she rendered ineffective assistance of counsel to Ms. Ramirez.

# EXHIBIT D

NO:_____

IN THE
Supreme Court of the United States

YUBY RAMIREZ and EDWARD LEZCANO,

*Petitioners,*

v.

UNITED STATES OF AMERICA,

*Respondent.*

On Petition for Writ of Certiorari to the
United States Court of Appeals
for the Eleventh Circuit

## PETITION FOR WRIT OF CERTIORARI

G. RICHARD STRAFER
G. RICHARD STRAFER, P.A.
2400 South Dixie Highway
Suite 200
Miami, Florida 33133
(305) 857-9090
*Counsel of Record*
*Counsel for Petitioner Lezcano*

KATHLEEN M. WILLIAMS
Federal Public Defender
REUBEN C. CAHN
Chief Assistant Federal Public Defender
TIMOTHY CONE
Assistant Federal Public Defender
One East Broward Boulevard
Fort Lauderdale, Florida 33301
(954) 356-7436 x 109
*Counsel for Petitioner Ramirez*

# QUESTIONS PRESENTED FOR REVIEW

I.      Where a statute of limitations defense is clear on the face of the indictment, does a defendant "waive" that defense by asserting it *during – rather than prior to – trial*, given that Fed. R. Crim. P. 12(b) only requires defenses based upon a "defect in the indictment" to be raised by pre-trial motion but permits all other defenses "capable of determination without the trial of the general issue" to be raised *either prior to or during trial*, particularly where the Advisory Committee specifically listed a statute of limitations defense as falling in the group of defenses that may be raised *at trial*?

II.     Where an indictment charges a lesser offense, and the defendant objects *at trial* to the court's instructing the jury on uncharged elements of a greater offense as a "constructive amendment of the indictment," may the court of appeals – consistent with *Stirone v. United States*, 361 U.S. 212 (1960) – ignore the constructive amendment as "waived" because the defendants did not challenge the "sufficiency of the indictment" *before trial*?

III.    Where an indictment charges a lesser offense, and the defendant objects *at sentencing* that it would violate the Fifth Amendment and *Apprendi v. New Jersey* to sentence him for an uncharged greater offense, may the court of appeals – consistent with *United States v. Cotton* – ignore the *Apprendi* error as "waived" because the defendant did not challenge the "sufficiency of the indictment"*before trial*?

*Stirone v. United States,*
    361 U.S. 212 (1960)..........................................6, 7, 19-23, 27

*Stogner v. California,*
    123 S.Ct. 2446 (June 26, 2003) ...........................................18

*United States v. Candelario,*
    240 F.3d 1300 (11ᵗʰ Cir. 2001) .....................................24, 25

*United States v. Carlisle,*
    517 U.S. 416 (1996).............................................................18

*United States v. Collake,*
    134 F.3d 372 (6ᵗʰ Cir. Jan. 12, 1998) .................................14

*United States v. Cook,*
    84 U.S. 168 (1872)............................................ 11, 13-17, 27

*United States v. Cotton,*
    535 U.S. 625 (2002)....................................19, 21-23, 26, 27

*United States v. Craft,*
    105 F3d 1123 (6th Cir. 1997) .............................................14

*United States v. Doggett,*
    230 F.3d 160 (5th Cir. 2000) ..............................................24

*United States v. Gallup,*
    812 F.2d 1271 (10th Cir. 1987) .........................................13

*United States v. Garcia-Guizar,*
    234 F.3d 483 (9th Cir. 2000) ..............................................24

*United States v. Handakas,*
    286 F.3d 92 (2nd Cir. 2002) ...............................................17

*United States v. Hyde,*
    520 U.S. 670 (1997)............................................................18

*United States v. Jarvis,*
    7 F.3d 404 (4th Cir. 1993) ...................................................16

*United States v. Karlin,*
    785 F.2d 90 (3rd Cir. 1986) ...........................................13, 15

*United States v. Klinger,*
    128 F.3d 705 (9th Cir. 1997) ...............................................17

*United States v. Mackins,*
    315 F.3d 399 (4th Cir. 2003) ...............................................24

*United States v. Meeker,*
    701 F.2d 685 (7th Cir. 1983) ...............................................13

*United States v. Miller,*
    471 U.S. 130 (1985)............................................................20

*United States v. Najjar,*
    283 F.3d 1306 (11th Cir. 2002) ...........................................13

*United States v. Nelson-Rodriguez,*
    319 F.3d 12 (1st Cir. 2003)..................................................24

*United States v. Ramirez,*
    324 F.3d 1225 (11th Cir. 2003) .................1, 2, 9, 16, 19, 27

*United States v. Redman,*
    331 F.3d 982 (D.C. Cir. 2003)...............................................3

---

**YUBY RAMIREZ, EDWARD LEZCANO,**

*Petitioners,*

**v.**

**UNITED STATES OF AMERICA,**

*Respondent.*

---

**On Petition for Writ of Certiorari to the
United States Court of Appeals
for the Eleventh Circuit**

---

# PETITION FOR WRIT OF CERTIORARI

---

Yuby Ramirez and Edward Lezcano respectfully petition the Supreme Court of the United States for a writ of certiorari to review the judgment of the United States Court of Appeals for the Eleventh Circuit, rendered and entered in case number 02-10731 in that court on March 13, 2003, *United States v. Yuby Ramirez*, 324 F.3d 1225 (11th Cir. 2003), which affirmed the judgment and commitment of the United States District Court for the Southern District of Florida, rehearing of which was denied on May 13, 2003.

## OPINION BELOW

A copy of the published decision of the United States Court of Appeals for the Eleventh Circuit, which affirmed the judgment and commitment of the United States District Court for the Southern District of Florida, *United States v. Ramirez*, 324 F.3d 1225 (11th Cir. 2003), is contained in the Appendix (A-1). A copy of the unpublished decision denying rehearing is contained in the Appendix (A-2).

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1) and PART III of the RULES OF THE SUPREME COURT OF THE UNITED STATES. The decision of the court of appeals was entered on March 18, 2003. The court of appeals denied rehearing on May 13, 2003. This petition is timely filed pursuant to SUP. CT. R. 13.1. The district court had jurisdiction because petitioner was charged with violating federal criminal laws. The court of appeals had jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which provide that courts of appeals shall have jurisdiction for all final decisions of United States district courts.

## STATUTORY AND OTHER PROVISIONS INVOLVED

Petitioner intends to rely upon the following rules and constitutional provisions:

Fed. R. Crim. P. 12 (1986):

(b) **Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

**(1)** Defenses and objections based on defects in the institution of the prosecution; or

**(2)** Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings) . . .

**(f) Effect of Failure To Raise Defenses or Objections.** Failure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.[1]

**U.S. Const. amend. V:**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . nor shall any person ... be deprived of life ... liberty ... without

---

[1] Effective December 1, 2002, Fed. R. Crim. P. 12(b)(2) became Fed.R. Crim. P. 12(b)(3), and Rule 12(f) became Rule 12(e), and the wording of these Rules changed somewhat. However, "[t]hese changes are intended to be stylistic only." Fed. R. Crim. P. 12 Advisory Committee Notes, 2002 Amendments; *United States v. Redman*, 331 F.3d 982, 987 n. 1 (D.C. Cir. 2003). As referred to in this Petition, "Rule 12" refers to the 1986 version of the Rule which was applied by the courts below in this case.

due process of law. . .

**U.S. Const. amend. VI:**

In all criminal prosecutions, the accused shall enjoy
the right to a speedy and public trial, by an impartial
jury . . . and to be informed of the nature and cause
of the accusation. . .

## STATEMENT OF THE CASE

### The Charges

On May 11, 2000, a federal grand jury returned a four-
count indictment, charging six defendants with witness tampering
in violation of 18 U.S.C. § 1512(a)(1)(C). Both Edward Lezcano
and Yuby Ramirez were charged in Count III of the indictment,
which alleged that "[o]n or about June 22, 1993," they – together
with the other four defendants - did knowingly, intentionally and
willfully kill Bernardo Gonzalez, a/k/a "Venao" with the intent to
prevent Bernardo Gonzalez, a/k/a "Venao" from communicating to
a law enforcement officer or a judge of the United States
information relating to the commission of federal offenses by
Salvador Magluta, a/k/a "Sal'" and Augusto Falcon, a/k/a "Willy,"
in violation of Title 18 United States Code, Sections 1512(a)(1)(C)
and 2.

Lezcano (but not Ramirez) was also charged in Counts I
and II, which charged similar offenses against different
witness/victims on September 18, 1989 (Count I) and August 22,
1992 (Count II). Notably, although the indictment alleged that all
three of the killings were done "knowingly, intentionally and
wilfully," there was *no* allegation that any of the killings were done

4

with "premeditation" or "malice aforethought" – both of which are essential elements of first degree murder.[2]

## The Motion for Judgment of Acquittal

Ramirez and Lezcano proceeded to trial on October 2, 2001, at which time the government in its opening statement confirmed that all of the witnesses were killed prior to June 22, 1993 – which was more than five (5) years prior to the grand jury's return of its indictment. Immediately after the government concluded its opening, both defendants moved for a judgment of acquittal "on the ground that the non-capital offenses charged under 18 U.S.C. § 1512 were not committed within the applicable statute of limitations." Defense counsel explained to the court that "a killing in violation of 18 U.S.C. § 1512 is not a capital crime, and thus not exempt from the statute of limitations, unless it is first degree murder." Since the indictment in this case did not charge the elements of first degree murder – *i.e.*, "premeditation" and "malice aforethought" – and the prosecution was brought more than five years after the crimes alleged, the defendants asked the court to dismiss the indictment as time-barred. Lest the court have any confusion on the issue, counsel clarified that the defendants were *not* challenging the sufficiency of the indictment. They conceded that the indictment stated "an offense" – just *not* an offense punishable by death, and outside the statute of limitations.

---

[2]Title 18 U.S.C. § 1512(a)(1)(c) provides that the killing of a federal witness will be punished under 18 U.S.C. §§ 1111 and 1112, the murder and manslaughter statutes. The punishment available depends upon the *mens rea* pled and proven. A killing in violation of § 1512(a)(1)(C) is punishable as first-degree murder if malice aforethought and premeditation are charged and proven, second-degree murder if malice alone is charged and proven, and voluntary or involuntary manslaughter where less culpable mental states are alleged. *See* 18 U.S.C. § 1512(a)(2)(A), § 1111, § 1112.

The court did not rule on the defendants' motion for judgment of acquittal at that time. Rather, the court allowed the trial to proceed. After the close of the government's case, however, when it was time for the parties to argue their motions for judgment of acquittal, the court precluded any further argument on the statute of limitations issue, announcing: "I am in the process of preparing an order denying that motion on the basis that it is a violation of – that [it] does not comport with Rule 12(b), so you need not argue that at this time."

## The Charge Conference

At the charge conference that followed, the defendants requested an instruction on the statute of limitations. The court denied the request. When the government, in turn, requested that the jury be instructed on the elements of malice aforethought and premeditation, Ramirez and Lezcano objected to these proposed instructions as a constructive amendment of the indictment and a violation of their Fifth Amendment right to be tried only on charges leveled by the grand jury because the indictment made no mention of malice or premeditation. The government responded, first, that the indictment should be read liberally to include premeditation and malice. But even if it could not be so read, the government contended, second, that the court should still instruct the jury on these uncharged elements because there would be "no prejudice to these defendants." At that point, however, the court interjected:

> THE COURT: I believe Mr. Cahn would say it is in violation of the rule of law in *Stirone*.
>
> MR. CAHN [Counsel for Ramirez]: Yes, Your Honor, that would be our position, it violates our right to be tried only on the charges brought by the grand jury.

second-degree murder, the government acknowledged, *"the case must be remanded for resentencing."*

The Eleventh Circuit's Decision

In a published opinion, the Eleventh Circuit affirmed all of the defendants' convictions and sentences. *United States v. Ramirez*, 324 F.3d 1225 (11th Cir. 2003). The court found that the statute of limitations defense was "clear on the face of the indictment," *id.* at 1127-1128 – thus agreeing with the defense that the indictment failed to allege the "premeditation" and "malice aforethought" necessary to first degree murder and rejecting the district court's suggestion that the missing elements could be "liberally" implied from the standard terms, "knowingly, intentionally, and willfully." Nevertheless, the court held that:

> [W]hen a statute of limitations defense is clear on the face of the indictment and requires no further development of facts at trial, a defendant waives his right to raise that defense by failing to raise it in a pretrial motion.

*Id.* at 1228-1229. In support of its ruling, the court pointed out that under Fed. R. Crim. P. 12(b)(2) defenses and objections based on "defects in the indictment" must be raised prior to trial. *Id.* at 1227. In the court's view, the defendants' statute of limitations defense was "merely" "a challenge based upon the sufficiency of the indictment," and for that reason, it "should have been raised before trial." *Id.* Since it was not, it was waived.[3] In a single footnote to its finding of waiver, the court suggested that it could

---

[3]While the court recognized that Rule 12(f) allowed for consideration of a waived issue "for good cause shown," the court stated that no good cause existed here, and reaffirmed its finding of "waiver" because – in its view – the defendants had "sought a strategic advantage" by waiting until jeopardy attached to file their motion. *Id.* at 1228 & n. 8.

disregard the defendants' constructive amendment and *Apprendi*-based sentencing arguments, on Rule 12 waiver grounds as well:

> In light of our holding, we need not address the constructive amendment and sentencing issues that arise from the defendants' arguments regarding the sufficiency of the indictment.

*Id.* at 1228 at n.10.

### The Petition for Rehearing

The defendants petitioned the Eleventh Circuit for rehearing *en banc*, or at the very least, for a panel rehearing, arguing that the panel incorrectly equated a "statute of limitations" defense with an objection to a "defect in the indictment"; that the court's broadening of Rule 12 violated due process; and that the panel's rulings that the constructive amendment and *Apprendi* issues were "waived" conflicted with prior Eleventh Circuit authority. The court, however, denied rehearing.

**REASONS FOR GRANTING THE WRIT**

I.

**THE COURT SHOULD GRANT THE WRIT TO DECIDE AN IMPORTANT FEDERAL QUESTION WHICH HAS NOT BEEN, BUT SHOULD BE, SETTLED BY THIS COURT – NAMELY, WHETHER UNDER FED. R. CRIM. P. 12(b) A STATUTE OF LIMITATIONS DEFENSE THAT IS CLEAR ON THE FACE OF THE INDICTMENT *MAY* PROPERLY BE RAISED *AT TRIAL*, OR RATHER, WHETHER IT *MUST* BE RAISED *BEFORE TRIAL* OR BE WAIVED**

Over a century ago, long before the enactment of the Federal Rules of Criminal Procedure, this Court held that a defendant could *only* assert a statute of limitations defense *at trial* "by special plea [a means of raising affirmative defenses] or by evidence under the general issue." *United States v. Cook*, 84 U.S. 168, 179 (1872). According to *Cook*, assertion by pre-trial "demurrer" (*i.e.*, a motion arguing that even assuming the truth of the allegations in the indictment, the indictment could not stand) was improper, even where the statute of limitations defense was apparent on the face of the indictment, because a demurrer would deny the government the right to prove an exception to the statute of limitations at trial. *Id.* at 179-180. The Court was clear in *Cook*, however, that *no "different rule would apply* in the case if the statute of limitations did not contain any exception, as time is not of the essence of the offence." *Id.* at 180 (Emphasis added). *Cook* remained the law in this country for the sixty years. *See, e.g.*, *Biddinger v. Commissioner of Police*, 245 U.S. 128, 135 (1917) (reaffirming that "the statute of limitations is a defense and *must* be asserted *on the trial* by the defendant in criminal cases.")

In 1944, Congress enacted the Federal Rules of Criminal Procedure, which relaxed the *Cook* rule to a certain degree. Under new Rule 12(b), assertion of a statute of limitations defense was no longer mandated at trial and precluded pre-trial. Rather, Rule 12(b) continued to *permit* defendants to raise defenses "capable of determination without the trial of the general issue" *at trial* but also now *permitted* them to raise such defenses by pre-trial motion. Congress *did* say that certain defenses – for instance, those based upon "defects in the institution of the prosecution" and "defects in the indictment"– *must* be raised in a pre-trial motion. However, it was only the failure to raise defenses or objections which *must* be raised by pre-trial motion that resulted in a waiver under the new Rule 12(f).

11

In discussing the two categories of mandatory and permissive pre-trial motions, the Advisory Committee clarified that *Congress intended to continue the practice under existing law*. In a lengthy Note to subsections (b)(1) and (b)(2) of Rule 12, the Advisory Committee explained:

> In one group are defenses and objections which must be raised by motion, failure to do so constituting a waiver. In the other group are defenses and objections which *at the defendant's option* may be raised by [pre-trial] motion, failure to do so, however, not constituting a waiver. . . .
>
> In the first of these groups are included all defenses and objections that are based on defects in the institution of the prosecution or in the indictment and information, other than lack of jurisdiction or failure to charge an offense. . . . Among the defenses and objections in this group are the following: Illegal selection or organization of the grand jury, disqualification of individual grand jurors, presence of unauthorized persons in the grand jury room, other irregularities in grand jury proceedings, defects in indictment or information other than lack of jurisdiction or failure to state an offense, etc. *The provision that these defenses and objections are waived if not raised by motion substantially continues existing law, as they are waived at present unless raised before trial by plea in abatement, demurrer, motion to quash, etc.*
>
> In the other group of objections and defenses, which the defendant at his option may raise by motion before trial, are included *all defenses which are capable of determination without a trial of the*

*general issue.* They include such matters as former jeopardy, former conviction, former acquittal, *statute of limitations,* immunity, lack of jurisdiction, failure of the indictment or information to state an offense, etc. *Such matters have been heretofore raised by demurrers, special pleas in bar and motions to quash.*

Advisory Committee Note to Fed. R. Crim. P. 12(b) (1) and (2) (1944) (Emphasis added).

Based upon the pre-Rules practice under *Cook* and this extensive explanatory Note to Rule 12(b) by the Advisory Committee, it has been the settled law in this country since 1944 – even in the Eleventh Circuit – that under Rule 12(b), a statute of limitations defense continues to be treated like other affirmative defenses, which *may be asserted at trial (and in fact, must be asserted at trial to preclude waiver). See United States v. Najjar,* 283 F.3d 1306, 1308 (11th Cir. 2002) ("Pursuant to binding precedent, the statute of limitations is a matter of defense that must be asserted *at trial* by the defendant"); *United States v. Gallup,* 812 F.2d 1271, 1280 (10th Cir. 1987) ("It is well settled that the statute of limitations is an affirmative defense which is waived unless raised *at trial*"); *United States v. Karlin,* 785 F.2d 90, 92-93 (3rd Cir. 1986) ("[I]n criminal cases the statute of limitations . . . is an affirmative defense that will be considered waived if not raised in the district court before or at trial"); *United States v. Meeker,* 701 F.2d 685 (7th Cir. 1983) (time bars are "defenses *at trial*"); *United States v. Walsh,* 700 F.2d 846, 855 (2nd 1983)("statute of limitations" was an affirmative defense that defendants could have raised in a pretrial motion pursuant to Rule 12, or "could have asserted for the first time at trial after pleading not guilty"); *United States v. Williams,* 684 F.2d 296, 300 (4th Cir. 1982) (quoting Professors Wright and Moore as agreeing that a statute of limitations defense is waived if not raised *at trial*); *United States v.*

*Wild*, 551 F.2d 418, 422 (D.C. Cir. 1977) (extensively discussing *Cook*, and noting that D.C. Circuit law was consistent with view of *Cook* that defendant had to raise the statute of limitations as an affirmative defense) (emphasis added).

Unfortunately for Ramirez and Lezcano, the Eleventh Circuit changed the rules of the game in their case. Ignoring not only prior Eleventh Circuit precedent, but also importantly, *Cook* and the pre-Rules practice as well as the Advisory Committee's Note to the adoption of Rule 12(b), the Eleventh Circuit created a stringent new "reverse-*Cook*" version of Rule 12 for Ramirez and Lezcano. Specifically, the Eleventh Circuit held in their case that where the statute of limitations defense is "clear on the face of the indictment," such a defense *may not* be asserted at trial, but rather, *must* be asserted in a pre-trial motion, or be waived.

Only the Sixth Circuit has ever suggested similarly. *See United States v. Collake*, 134 F.3d 372, 1998 WL 25007 ** 5 (6th Cir. Jan. 12, 1998) (unpublished) (holding that limitations defense plain on the face of the indictment "must be made in a pretrial motion" because it is "an attack on the indictment itself;" citing *United States v. Craft*, 105 F3d 1123 (6th Cir. 1997); *but see Craft*, 105 F3d at 1126-1127 (reaffirming rule that "[t]he statute of limitations is an affirmative defense that may be waived under Federal Rule of Criminal Procedure 12(f) if not raised *at* or before *trial*"; addressing only – and finding error in – government's claim that district court *could not* rule pre-trial on motion alleging limitations period had run based upon facts alleged in indictment; noting that it is "proper, and in some cases may be necessary, to raise the question independently, if the court has set a date for filing pretrial motions under Rule 12(c)") (Emphasis added).

In the other circuits, there has never been any distinction under Rule 12(b) for a statute of limitations defense "clear on the face of the indictment," nor any bar to asserting such a defense *at*

14

*trial. See, e.g., Askins v. United States*, 251 F.2d 909, 913 & n. 6 (D.C. Cir. 1958) (where statute of limitations defense is clear on the face of the indictment itself, it "must be raised **at the trial** or before trial on motion;" citing *Cook* and *Biddinger*)[4]; *Karlin*, 785 F.2d at 91-93 (reaffirming, in context of tax fraud case where the statute of limitations defense was "clear on the face of the indictment," that the statute of limitations is an affirmative defense that "will be considered waived if not raised in the district court before or *at trial*") (emphasis added).

The Eleventh Circuit's "raise pre-trial or waive" rule for a statute of limitations defense "clear on the face of the indictment" turns *Cook* completely on its head. And indeed, it blindly – and unjustifiably – rejects the Advisory Committee's firm indication that Rule 12(b) was intended to continue the existing practice regarding the statute of limitations. However, even if the language of the Rule and the Advisory Committee had not been so plain in this regard, there would *still* be no support in the law for characterizing a statute of limitations defense "clear on the face of the indictment" as a challenge to the "sufficiency of the indictment," or to a "defect in the indictment" which *must* be raised pre-trial under Rule 12(b)(2). This Court has reiterated

---

[4]In *Askins*, the court granted a dismissal based upon a statute of limitations defense asserted for the first time on collateral review, because the defendant was charged with first-degree murder (for which there was no statute of limitations), and was only convicted at trial of the lesser-included offense of second-degree murder, which turned out to be time-barred. The *Askins* court noted that in that "special situation" "no period of limitations was applicable to the indictment, so that the question of lawfulness of the sentence did not arise until after the verdict." 251 F.2d 909. The situation presented in Ramirez and Lezcano's case, however, is the exact opposite of *Askins*, and falls directly within *Askins'* rule that where a statute of limitations defense is clear on the face of the indictment (as it would have been if the defendants were charged with second or any lesser-degree murder), the defense would have to be asserted before or at trial, to avoid waiver. *See also Wild*, 551 F.2d at 422 (discussing *Askins*).

numerous times that "an indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). As the Court made clear in *Cook*, the statute of limitations has never been considered an "element" of the crime charged. *See also United States v. Walsh*, 700 F.2d 846, 855 (2nd Cir. 1983). Rather, as the Second Circuit explained in *Walsh*, like the principle of double jeopardy, "the statute of limitations simply limits the government's power to prosecute." *Id.* (and cases cited therein).

It is precisely because a statute of limitations defense is so similar in effect to other affirmative defenses like double jeopardy – which often will also be "clear on the face of the indictment" – that the novel "exception" the Eleventh Circuit has created in *Ramirez* is so dangerous and far-reaching. In the double jeopardy context, the courts have until now remained faithful to the Advisory Committee's Note and have held – notwithstanding the fact that the double jeopardy issue can in most cases be resolved without any review of the government's trial evidence – that a double jeopardy defense may indeed be raised *at trial* without waiver. *See, e.g., United States v. Jarvis*, 7 F.3d 404, 409 (4th Cir. 1993) ("failure to [raise defense] before trial does not result in an automatic forfeiture of the double jeopardy defense"); *Grogan v. United States*, 394 F.2d 287, 289 (5th Cir. 1967) (to avoid waiver under Rule 12(b), double jeopardy defense should be raised "at some point in the proceedings in the district court"). The Eleventh Circuit's contrary rule in the instant case threatens to undermine this and other bodies of case law interpreting Rule 12(b). The "clear on the face of the indictment" exception – if left unchecked by this Court – could well "swallow" other affirmative defenses and ultimately Rule 12(b) as a whole.

16

The Advisory Committee grouped a statute of limitations defense together with defenses like double jeopardy for obvious reasons. Neither a charge barred by the statute of limitations nor a charge barred by double jeopardy can ever be "cured." Neither the statute of limitations nor double jeopardy is a mere "technical defect" on the face of the indictment – such as multiplicity or duplicity – which may indeed be cured (*without changing the essential nature of the charge*) simply by resubmitting the indictment to the grand jury. *See, e.g., United States v. Handakas*, 286 F.3d 92, 97 (2nd Cir. 2002) (multiplicity claim falls directly within Rule 12(b)(2); failure to raise multiplicity pre-trial ordinarily constitutes waiver); *United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997) (challenges to alleged duplicity of indictment "fall squarely within Rule 12(b)(2)'s mandate"). As the Ninth Circuit has explained, "affirmative defenses" stand in contrast to such "technical defects" because they "continue to operate as defenses regardless of the regularity of . . . the indictment." *United States v. Smith*, 866 F.2d 1092, 1098 (9th Cir. 1987). *See also id.* at 1096-1097 (Rule 12(b)(2) only requires assertion of curable "technical defenses" such as "misnomer, duplicity or multiplicity, misjoinder, indefiniteness, partial insufficiency, surplusage, and other defects in the indictment or information that go to *matters of form rather than substance*;" it "does not require pretrial assertion of affirmative defenses," "and the government does not seriously argue to the contrary") (emphasis added).

So long as an affirmative defense involves an issue collateral to and "capable of determination without the trial of the case," *and* continues to operate as a defense "regardless of the regularity of the indictment," Rule 12(b) clearly gives a defendant the "option" of raising such a defense *at trial*. Line-drawing between affirmative defenses that are "clear on the face of the indictment," and those that are not, runs afoul of *Cook* and the pre-Rules practice, as well as the Advisory Committee's Note, and

17

results in a rewriting of Rule 12(b) in a manner contrary to its express language and intent. The task of courts interpreting Federal Rules of Procedure, however, "is not to act as policymaker, deciding how to make the Rules as fair as possible, but rather to determine what the Rules actually provide." *United States v. Hyde*, 520 U.S. 670, 678 (1997) (citing *United States v. Carlisle*, 517 U.S. 416, 430 (1996)).

Incidentally, the Eleventh Circuit's interpretation of Rule 12(b) in this case had the same *ex post facto* effect for Ramirez and Lezcano, as the law the Court recently overturned in *Stogner v. California*, 123 S.Ct. 2446 (June 26, 2003). Both the law at issue in *Stogner* and the Eleventh Circuit's decision here "revived" time-barred prosecutions. While, admittedly, judicial rule-changing is not subject to the *ex post facto* clause, it *is* subject to review under the Due Process Clause. This Court has reiterated on numerous occasions that Due Process prevents a court from changing the rules, midstream, to defeat federal review of the violation of rights. *See NAACP v. Alabama*, 357 U.S. 449, 457-458 (1958); *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964); *Bush v. Gore*, 531 U.S. 98, 114-116 (2000) (Rehnquist, C.J., concurring) (Due Process bars a court from impermissibly broadening the scope of a statute beyond what a fair reading provides) (citing *NAACP* and *Bouie*).

In short, the Eleventh Circuit had no basis in law, logic or Due Process to conclude that Ramirez and Lezcano's assertion of a statute of limitations defense after trial commenced was "precisely what Rule 12 was designed to prevent." 324 F.3d at 1228. Rather, as the Advisory Committee advised and the other courts have held, Rule 12 expressly gives defendants the option to raise this defense – like the other listed affirmative defenses – *after* trial commences. The Court should grant the writ and instruct the lower courts explicitly that, pursuant to Rule 12(b), even affirmative defenses

"clear on the face of the indictment" *may* indeed be raised at the defendant's option *during trial, without waiver.*

## II.

**THE COURT SHOULD GRANT THE WRIT BECAUSE THE ELEVENTH CIRCUIT HAS DECIDED AN IMPORTANT FIFTH AMENDMENT INDICTMENT CLAUSE QUESTION IN A WAY THAT CONFLICTS WITH THIS COURT'S DECISIONS IN *STIRONE* AND *COTTON*, AND IN DOING SO, HAS SO FAR DEPARTED FROM THE ACCEPTED AND USUAL COURSE OF JUDICIAL PROCEEDINGS, AND SANCTIONED SUCH A DEPARTURE BY A LOWER COURT, AS TO CALL FOR AN EXERCISE OF THIS COURT'S SUPERVISORY POWER**

In the decision below, the Eleventh Circuit acknowledged that it was "clear on the face of the indictment" that Ramirez and Lezcano were *not* charged with first degree murder. Nevertheless, the court held, it did not need to address, and rather could simply ignore, these defendants' arguments that the court constructively amended their indictment at trial by instructing the jury as to uncharged elements of first-degree murder. In the court's view, such arguments "regard[ed] the sufficiency of the indictment," *Ramirez*, 324 F.3d at 1228 n. 10, and therefore should have been raised prior to trial. In thus disposing of an undisputed error under the Fifth Amendment Indictment Clause as "waived," the court of appeals improperly confounded the *unrelated* statute of limitations and Fifth Amendment issues, mischaracterized the constructive amendment of the indictment as an error "regarding the sufficiency of the indictment," and improperly ignored both the analogous

19

procedural posture and precedential force of *Stirone v. United States*, 361 U.S. 212 (1960).

The Fifth Amendment Indictment Clause provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury." What this means is that a defendant has a right to have the grand jury set forth each essential element of a charge. *See, e.g., Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998); *United States v. Miller*, 471 U.S. 130, 136 (1985). Since, however, the statute of limitations is *not* an element of any charge, *see supra*, Issue I, it has no relevance under the Indictment Clause. Accordingly, even assuming for the sake of argument that the Eleventh Circuit was correct that the defendants waived their statute of limitations defense under Rule 12(f) by failing to raise that defense by pre-trial motion under Rule 12(b), the effect of that waiver was merely to permit the trial to proceed on the charge returned by the grand jury and set forth in the indictment. The indictment here sufficiently stated "an offense" – namely, the offense of manslaughter, which requires neither "malice aforethought" nor "premeditation." Thus, the defendants could not have argued that their indictment was "insufficient" or "defective" under Rule 12(b). There was simply no objection *to the indictment* – other than the running of the statute of limitations – that the defendants could or even arguably should have raised pretrial. An Indictment Clause "error" only occurs – and the defendant only has an obligation to object to such an error – when the court or the government attempts to amend the indictment without resubmitting it to the grand jury. *See Stirone*, 361 U.S. at 215-216 ("after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself"). Here, an Indictment Clause error occurred at the moment when the court instructed the jury on "malice aforethought" and "premeditation" – thus, permitting the jury to convict Ramirez and Lezcano of an uncharged, greater offense. In objecting to the

20

court's constructive amendment of the indictment in this way, the defendants clearly were not objecting *"to the sufficiency of the indictment"* as the grand jury had returned it, but rather, to the constitutional error which occurred at trial when the district court "broadened" the indictment the grand jury had returned.

Because the defendants objected at the first moment when the possibility of this Fifth Amendment violation became apparent – at the charge conference, prior to the court's instructions to the jury – their objection was timely under *Stirone*, and it adequately preserved the issue for appellate review under that case. *See, e.g., Stirone*, 361 U.S. at 214, 219 (reversing conviction based upon constructive amendment of the indictment and denial of Fifth Amendment right, where defendant objected at trial, but not before, to trial judge's charging the jury on alternate means of violating Hobbs Act, which had not been charged).

The Eleventh Circuit's disregard of *Stirone* and contention that Ramirez and Lezcano's objection to an Indictment Clause error at trial in this case was *not* a timely objection is inexplicable given this Court's reaffirmation *just to the contrary* last term in *United States v. Cotton*, 535 U.S. 625 (2002). In *Cotton*, a case involving a violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the government urged the Court to find *Stirone* impliedly overruled by *Chapman v. California*, 386 U.S. 18 (1967), to the extent that the Court had held in *Stirone* that deprivation of the Indictment Clause right is "far too serious to be treated as nothing more than a variance and dismissed as harmless error." 361 U.S. at 217. According to the government, Indictment Clause error is no different than other forms of constitutional error, and should similarly be subject to "harmless error" review, rather than automatically reversible. *See* Brief for the United States, 2002 WL 264766 at *19, 32.

The Court, however, did not overrule *Stirone*. Rather, the Court expressly reaffirmed *Stirone*'s recognition that "an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form," *Cotton*, 535 U.S. at 631, but found that *Stirone*'s corollary rule – namely, that "deprivation of such a basis right" was "far too serious to be treated as nothing more than a variance and then dismissed as harmless error," 361 U.S. at 217 – was not applicable to cases that were not procedurally like *Stirone* (where the "proper objection had been made in the district court.") *Id.* at 631.[5]

This case, however, *was* procedurally like *Stirone*. Here, "the proper [Fifth Amendment] objection *had been made* in the district court" in the exact way it *"had been made"* in *Stirone*. Since the Court , in Cotton, had preserved the applicability of *Stirone*'s automatic reversal rule for cases that were procedurally like *Stirone*, it was error under *Cotton* for the Eleventh Circuit to treat this objection as "waived" – and indeed, *not even* deserving of the "plain error" review the defendants received in *Cotton*. In complete derogation of both *Cotton* and *Stirone*, the Eleventh Circuit accorded the Fifth Amendment error in Ramirez' and Lezcano's case, *no review at all*.

The Court should grant the writ in this case and hold, consistent with both *Stirone* and *Cotton*, that contrary to the view of the Eleventh Circuit, Ramirez and Lezcano properly preserved their Fifth Amendment objection to the constructive amendment of the indictment by raising that objection when the error occurred at trial. Because their Fifth Amendment objection was *not waived*, but rather, was properly preserved, and because neither the

---

[5]Since the defendants in *Cotton* had *not* made any objection at any time in the district court, the Court reviewed the *Apprendi* error in that case under the "plain error" standard for "waived" errors (a species of "harmless error" review). *See Cotton*, 535 U.S. at 631.

government nor the Eleventh Circuit disputed the *fact* of the Fifth Amendment error, *Stirone* – as reaffirmed in *Cotton* – precluded the Eleventh Circuit's disregard of this error as "harmless". Indeed, the harmfulness of the error should have been readily apparent to the Eleventh Circuit to the extent that the district court used the jury's findings on "malice aforethought" and "premeditation" as the premise for sentencing the defendants to life imprisonment for first-degree murder. In justifying its disregard of this harmful Indictment Clause error, and in publishing its decision in this regard so that it will be precedent for future prosecutions, the Eleventh Circuit "so far departed from the accepted and usual course of judicial proceedings" in this case, and "sanctioned such a departure by a lower court" on the Fifth Amendment issue, that this case necessitates this Court's supervision by certiorari.

## III.

**THE COURT SHOULD GRANT THE WRIT BECAUSE THE ELEVENTH CIRCUIT HAS DECIDED AN IMPORTANT FIFTH AMENDMENT INDICTMENT CLAUSE QUESTION INVOLVING *APPRENDI V. NEW JERSEY* IN A WAY THAT CONFLICTS WITH THE DECISIONS OF EVERY OTHER CIRCUIT COURT TO HAVE DECIDED THE ISSUE, AS WELL AS THIS COURT'S DECISION IN *COTTON*, AND IN DOING SO, HAS SO FAR DEPARTED FROM THE ACCEPTED AND USUAL COURSE OF JUDICIAL PROCEEDINGS, AND SANCTIONED SUCH A DEPARTURE BY A LOWER COURT, AS TO CALL FOR AN EXERCISE OF THIS COURT'S SUPERVISORY POWER**

In the wake of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), every circuit court of appeals to have expressly considered the issue has held that an objection under *Apprendi* to a sentence above the statutory maximum for the offense set forth in the indictment is timely if the objection is raised *at the sentencing hearing*, which is the time the Fifth Amendment Indictment Clause violation occurs. *See United States v. Nelson-Rodriguez*, 319 F.3d 12, 47 (1st Cir. 2003); *United States v. Stewart*, 306 F.3d 295, 310 (6th Cir. 2002); *United States v. Mackins*, 315 F.3d 399, 406 (4th Cir. 2003); *United States v. Candelario*, 240 F.3d 1300, 1303-1306 (11th Cir. 2001); *United States v. Garcia-Guizar*, 234 F.3d 483, 488 (9th Cir. 2000); *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000).

The reason for *not* requiring this type of constitutional objection to be asserted at any time prior to sentencing has been best explained by the Eleventh Circuit itself. In the context of a prosecution under 21 U.S.C. § 841(a), the Eleventh Circuit stated:

> Although a defendant's constitutional objection will be timely if made at any time prior to sentencing, it is not *necessary* that it be made prior to sentencing. The rationale behind this is simple. *If the indictment properly charges an offense, it would be unproductive and run contrary to a defendant's interest to require him to object to the indictment's failure to specify a quantity amount.* If we insisted on an objection to the indictment, we would effectively be forcing a defendant to claim that the Government has undercharged him. That is, the defendant would basically be forced to assert that the Government could have indicted him for a section 841(b)(1)(A) or section 841(b)(1)(B) offense rather than the section 841(b)(1)(C) offense that the Government is currently charging. *Because*

24

> *it is the Government's duty to ensure that it has charged the proper offense, a defendant has no responsibility to point out that the Government could have charged him with a greater offense.* Similarly, it would be fruitless to insist that, at trial, a defendant must request the court to instruct the jury to determine quantity. Section 841(b)(10(C) permits sentencing without regard to quantity, in which event a jury finding of quantity is unnecessary. Therefore, to preserve his constitutional objection, a defendant need object only at sentencing.

*Candelario*, 240 F.3d at 1305 (emphasis added); *see also Stewart*, 306 F.3d at 310 (noting that the constitutional error "does not lie in the indictment itself"; it would be "imprudent" for defense counsel to object prematurely to an indictment "which, by all rights, is facially sound"; this "would be in direct opposition to [the defendant's] penal interests," as it would result in the government's recharging the defendant with a more serious offense).

In light of the controlling force of *Candelario* and, presumably, the persuasive force of the decisions of these other circuits, the government candidly conceded before the Eleventh Circuit that if the indictment could *not* be read to include "malice aforethought" and "premeditation," the life sentences imposed upon Ramirez and Lezcano *could not stand*. Even if the court found the indictment charged second-degree murder, the government conceded, *"the case must be remanded for resentencing."*

The Eleventh Circuit, however, did *not* remand the case for resentencing. It ignored the government's concession. It ignored *Candelario*. It ignored every other circuit decision on the issue –

all indicating the objection was timely if made at sentencing. And ultimately, it found Ramirez and Lezcano's *Apprendi* objection at sentencing to have been "waived." In fact, in the Eleventh Circuit's view, these defendants' failure to challenge the sufficiency of the indictment pre-trial – *i.e.*, their failure to ask the government to charge them with the greater, first-degree murder offense – so egregiously and irretrievably waived the *Apprendi* issue that the error did not even have to be reviewed for "plain error." Like the constructive amendment error, it was entitled to *no review at all*.

In this respect, the Eleventh Circuit's decision again conflicted with *Cotton*. For in *Cotton*, the Court expressly recognized that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" must, in federal prosecutions, "also be charged in the indictment," 535 U.S. at 627, and that even where the defendant fails to make his Fifth Amendment objection "in the District Court," the defendant is nevertheless entitled to "plain error" review of a sentence above the prescribed statutory maximum. *See id.* at 631-634. In according Ramirez and Lezcano even less review (*i.e.*, no review) for a *preserved* Fifth Amendment objection than the defendants in *Cotton* received for an *unpreserved* Fifth Amendment objection, the Eleventh Circuit "so far departed from the accepted and usual course of judicial proceedings," and "sanctioned such a departure by a lower court" as to call for this Court's supervision.

The Court should grant the writ, vacate the illegal life sentences, and instruct the Eleventh Circuit to remand this case to the district court for resentencing.

## CONCLUSION

This Court's intervention and review is crucial in this case. The Eleventh Circuit has upheld draconian sentences imposed on Ramirez and Lezcano for crimes with which they indisputably

were *not* charged – unfairly ignoring the government's own concession that based upon the charge, their cases *"should be remanded for resentencing."* To affirm the district court in this case, the court of appeals has ignored the express language of Rule 12(b), the Advisory Committee's Note to the adoption of that Rule, as well as this Court's decisions in *Cook, Stirone, Apprendi* and *Cotton.* And, in a precedent-setting published decision, it has effectively abrogated the Fifth Amendment rights of not just these defendants but all future Eleventh Circuit defendants – to a Grand Jury Indictment, to Due Process of law, and to Equal Protection of the laws.

After *Ramirez,* Eleventh Circuit defendants will be forced to "assist" the prosecution in charging decisions pre-trial or waive both statutory and constitutional rights and defenses at trial. Eleventh Circuit defendants will have to alert the government to affirmative defenses to the charges "clear on the face of the indictment" in time for the government to return to the grand jury and charge them with *different offenses,* often carrying greater penalties. If they do not so alert the prosecution, they may still be convicted of, and sentenced for, those uncharged greater defenses. As such, the Eleventh Circuit has dispossessed its defendants of rights and defenses defendants elsewhere in this country *do* in fact possess – including the most basic right, which is that of defending oneself in an *adversary* system of justice. While other defendants in other circuits will have viable defenses to assert at trial and at sentencing, Eleventh Circuit defendants will proceed to trial and sentencing at their risk, in a "lose/lose" posture.

This Court, however, can assure this does *not* occur. It can assure that rights and defenses do not vary by locale. To maintain uniformity of the law on these crucial issues, the Court should grant the writ to the Eleventh Circuit Court of Appeals in this case.

27

Respectfully submitted,

| | |
|---|---|
| G. RICHARD STRAFER | KATHLEEN M. WILLIAMS |
| G. RICHARD STRAFER, P.A. | Federal Public Defender |
| 2400 South Dixie Highway | REUBEN C. CAHN |
| Suite 200 | Chief Assistant Federal Defender |
| Miami, Florida 33133 | TIMOTHY CONE |
| (305) 857-9090 | Assistant Federal Public Defender |
| *Counsel of Record* | One East Broward Boulevard |
| *Counsel for Petitioner Lezcano* | Fort Lauderdale, Florida 33301 |
| | (954) 356-7436 x 109 |
| | *Counsel for Petitioner Ramirez* |

# APPENDIX

[PUBLISH]
IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 02-10731
D. C. Docket No. 00-00376-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YUBY RAMIREZ,
JAIRO CASTRO, et al.,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Florida

**(March 18, 2003)**

Before MARCUS and WILSON, Circuit Judges, and
LIMBAUGH*, District Judge.

PER CURIAM:

*Honorable Stephen N. Limbaugh, United States District Judge for
the Eastern District of Missouri, sitting by designation.

1A

Yuby Ramirez, Edward Lezcano, and Jairo Castro (collectively the defendants) appeal the life sentences they received after a jury found them guilty of witness tampering in violation of 18 U.S.C. § 1512(a)(1)(C) .[1] They assert that the indictment was time-barred, because it failed to charge a capital crime.[2] Because we find that the defendants waived their right to raise that defense by failing to raise it in a pretrial motion, we affirm.

## BACKGROUND

The defendants were involved in a conspiracy to murder various witnesses who were scheduled to testify against Salvador Magluta and Augusto Falcon, alleged drug kingpins in South Florida.[3] As a result of that conspiracy, three potential witnesses were murdered, and various attempts were made to kill others.

Consequently, on May 11, 2000, a grand jury indicted the defendants, among others, for witness tampering. The four-count indictment charged Lezcano with three counts of witness tampering, Castro with two counts of witness tampering, and Ramirez with one count of witness tampering.[4] The case

---

[1] Lezcano also was convicted of witness tampering in violation of 512(a)(1)(A).

[2] The defendants also assert that (1) the district court violated their Sixth Amendment rights by limiting the cross-examination of two of the government's witnesses, Phanor Caicedo- Ramos and Juan Carlos Caicedo-Ramos; (2) the district court improperly provided a *Pinkerton v. United States*, 328 U.S. 640 (1946), instruction; and (3) there was insufficient evidence to support their convictions. As we find that those issues lack merit and do not require any discussion, we will not address them herein.

[3] Magluta and Falcon were acquitted of the drug charges for which they originally were indicted, but they subsequently were charged with various counts of witness tampering as a result of these murders and other acts that they allegedly committed.

[4] Count One of the indictment charges that Lezcano and a coconspirator "did knowingly, intentionally and willfully aid, abet, counsel, command, induce and

2A

proceeded to trial, and, after opening statements, the defendants moved for a judgment of acquittal, asserting that the indictment was insufficient because it failed to charge the necessary elements of first degree murder, "malice aforethought" and "premeditation". Hence, they argued that they were entitled to a judgment of acquittal, because the indictment was time-barred. The district court, construing the motion as a Federal Rule of Criminal Procedure 12(b)(2) motion, held that their motion was untimely. Alternatively, it held that, under a liberal construction of the indictment, those elements were charged. It therefore denied the defendants' motion and instructed the jury regarding those elements.

This appeal followed.

## STANDARD OF REVIEW

We review the sufficiency of the indictment de novo. *United States v. Pendergraft*, 297 F.3d 1198, 1204 (11th Cir. 2002). We review the district court's denial of a motion as untimely under Rule 12(f) for abuse of discretion. *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990).

## DISCUSSION

The defendants assert that the indictment was insufficient, because the necessary elements of first degree murder, "malice aforethought" and "premeditation," were not charged. As a result, they contend that the district court should have granted their motion for a judgment of acquittal under Federal Rule of Criminal

---

procure the killing of Juan Acosta, Esq., by causing him to be shot by paid assassins, with the intent to prevent Juan Acosta, Esq., from testifying before a federal grand jury." Count Two charges that Lezcano, Castro, and others "did knowingly, intentionally and willfully kill Luis Escobedo . . . with the intent to prevent Luis Escobedo . . . from communicating to a law enforcement officer or a judge of the United States information relating to the commission of federal offenses by Salvador Magluta . . . and Augusto Falcon." Count Three contains the same language as Count Two, but charges the defendants and others with the killing of Bernardo Gonzalez.

Procedure 29, because, without those elements, the indictment was time-barred as it failed to charge a capital crime.[5] See 18 U.S.C. § 3282 (providing that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed").

Rule 12 provides that

> [a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. . . . The following must be raised prior to trial: . . . .
>
> (2) *Defenses and objections based on defects in the indictment* . . (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings).

Fed. R. Crim. P. 12(b)(2) (emphasis added). Rule 12 also provides that the "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute [a] waiver thereof." Id. R. 12(f).

Rule 12(b)(2) clearly provides that "[d]efenses and objections based on defects in the indictment" must be raised before trial. Id. R. 12(b)(2). Although the defendants raised their statute of limitations defense in a Rule 29 motion and not in a Rule 12(b) motion, we believe that their defense merely is a challenge based upon the sufficiency of the indictment that should have been raised before trial.[6] As they assert a defense "based on defects in

---

[5] Indeed, June 22, 1993 is the date on which the last crime charged with respect to the defendants was committed. As the indictment was not returned until May 11, 2000, more than five years after the date on which the crimes charged were committed, it would be time-barred unless the crimes charged were capital crimes. See 18 U.S.C. § 3282.

[6] The defendants assert that the Advisory Committee Notes to Rule 12 make clear that they had the option of bringing their motion before trial, but that they

the indictment" that was clear from the face of the indictment and that does not satisfy any of the exceptions set forth in the Rule,[7] id., they waived this issue by failing to raise it in a pretrial motion, see *United States v. Suescun*, 237 F.3d 1284, 1286–88 (11th Cir.) (holding that "Suescun's challenges . . . were capable of determination without the trial of the general issue" and that "Suescun waived his objection to the validity of the ndictment because he did not present it as required by Rule 12(b)"), cert. denied, 534 U.S. 863 (2001); *Ward v. United States*, 694 F.2d 654, 659 n.4 (11th Cir. 1982) (noting that failure to challenge the technical sufficiency of the indictment prior to trial constitutes a waiver of that challenge).[8]

---

were not required to do so, because a statute of limitations defense is a matter that can be brought in a permissive pretrial motion under Rule 12(b). Fed. R. Crim. P. 12 advisory committee notes (providing that permissive pretrial motions "include such matters as . . . statute of limitations"). As noted above, however, the defendants' statute of limitations defense is a defense based upon the sufficiency of the indictment. As the plain language of Rule 12 dictates that defenses based upon the sufficiency of the indictment must be brought before trial, there is no need to look to the notes. See *United States v. Vonn*, __ U.S. __, 122 S. Ct. 1043, 1049 n.6 (2002) ("In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule . . . .").

[7] Neither exception applies in this case. In fact, the defendants concede that they were not alleging that the indictment failed to state an offense. Although Lezcano asserts in his reply brief that the defendants are arguing that the indictment failed to state an offense, the opposite assertion was made before the district court and this Court. As a result, we need not address Lezcano's claim that the indictment failed to state an offense. See *Jackson v. United States*, 976 F.2d 679, 680 n.1 (11th Cir. 1992) (per curiam) (noting that "[a]rguments raised for the first time in a reply brief are not properly before the reviewing court" (internal quotation marks omitted)).

[8] Although Rule 12 provides that the waived issue can be considered upon a showing of cause, Fed. R. Crim. P. 12(f), there is no good cause in this case. As the district court noted,

[R]ather than file a motion prior to trial, Defendants decided to submit this motion and a lengthy memorandum immediately upon the conclusion of opening statements. Defendants were clearly prepared to file their motion earlier, but decided to withhold it in order to seek a

5A

Although we recognize that there may be times when a statute of limitations defense cannot be raised before trial because the development of facts pertaining to that defense is necessary, this is not one of those times. Nothing in this case warranted waiting until after opening statements to raise this defense;[9] the defendants merely waited to gain a strategic advantage by raising the defense after jeopardy attached. This tactic is precisely what Rule 12 was designed to prevent. See *United States v. Oldfield*, 859 F.2d 392, 397 (6th Cir. 1988). As the Sixth Circuit noted, Rule 12

> sharply restricts the defense tactic of 'sandbagging' that was available in many jurisdictions under common law pleading. Recognizing that there was a defect in the pleading, counsel would often forego raising that defect before trial, when a successful objection would merely result in an amendment of the pleading. If the trial ended in a conviction, he could then raise the defect on a motion in arrest of judgment and obtain a new trial. Federal Rule 12 eliminated this tactic as to all objections except the failure to show jurisdiction or to charge an offense.

---

strategic advantage by waiting until jeopardy attached upon the swearing in of the jury.

As in Suescun, Defendants in this case clearly "had all the information necessary to challenge the [indictment] prior to the date set by the district court for pretrial motions, but did not." Rule 12(b) is designed to prevent precisely such use of belatedly filed motions and, accordingly, mandates that certain motions be filed prior to trial.

Thus, the defendants were unable to show cause to excuse their waiver in this case.

[9] The defendants assert that they could not raise their statute of limitations defense until after opening statements, because they needed the government to concede that the crimes charged were committed more than five years before the indictment was returned. We, however, disagree, because the indictment specifically set forth the dates on which the crimes were committed. Thus, the statute of limitations defense was clear on the face of the indictment.

Id. (internal quotation marks omitted). As a result, the defendants waived their defense by failing to raise it before trial.[10]

## CONCLUSION

Thus, we hold that when a statute of limitations defense is clear on the face of the indictment and requires no further development of facts at trial, a defendant waives his right to raise that defense by failing to raise it in a pretrial motion.
Accordingly, we AFFIRM.

---

[10] In light of our holding, we need not address the constructive amendment and sentencing issues that arise from the defendants' arguments regarding the sufficiency of the indictment.

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 02-10731

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YUBY RAMIREZ,
JAIRO CASTRO,
EDWARD LEZCANO,
a.k.a. Manuel,
a.k.a. Tony,

Defendants-Appellants.

On Appeal from the United States District Court
for the Southern District of Florida

## ON PETITION(S) FOR REHEARING AND PETITION(S) FOR REHEARING EN BANC
(Opinion_____, 11th Cir., 19___, _____F.2d_____).

Before MARCUS and WILSON, Circuit Judges, and LIMBAUGH*, District Judge.

PER CURIAM:

The Petition(s) for Rehearing are DENIED and no member of this panel nor other Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Petition(s) for Rehearing En Banc are DENIED.

8A

ENTERED FOR THE COURT:

/s/
UNITED STATES CIRCUIT JUDGE

*Honorable Stephen N. Limbaugh, United States District Judge for
the Eastern District of Missouri, sitting by designation.