UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-22395-CIV-Lenard/Garber

YUBY RAMIREZ,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge Joan A. Lenard. This Court, on remand from the United States Court of Appeals for the Eleventh Circuit, has been directed to hold an evidentiary hearing on "(1) whether Ramirez would have pleaded guilty upon the advice of counsel, and (2) whether counsel would have advised her to plead guilty had they known that she faced possible life imprisonment."[1] Pursuant to the remand order, an evidentiary hearing on the aforesaid two issues was held before the undersigned on May 26, 2009. The petitioner Yury Ramirez and her trial counsel, Reuben Cahn, an Assistant Federal Public Defender, appeared and testified.

The Eleventh Circuit has previously held that "Ramirez's trial counsel performed deficiently," *Ramirez v. U.S.*, 260 F. App'x at 185, 188 (11th Cir. 2007), by "mistakenly advising Ramirez at the time she was considering plea offers for five and ten-year prison terms that she faced at most a ten-year prison term if convicted at trial when she actually faced a possible life sentence." Such ruling

---

[1] Per curiam order by Eleventh Circuit entered on February 18, 2009, at page 7.

satisfied one of the requisite prongs set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Such holding is appropriately based upon a finding that her counsel's performance fell below an objective standard of reasonableness. It is now necessary to make a determination, based upon testimony and evidence, whether the petitioner was prejudiced as a result of counsel's deficient performance by considering the two issues set forth in the Eleventh Circuit's remand.

## DISCUSSION

Petitioner was charged by Count 3 in an indictment, along with co-defendants, with a violation of 18 U.S.C. §§1512(a)(1)(C) and (2). The indictment alleges that Ramirez and other co-defendants "did knowingly and wilfully kill Bernardo Gonzalez, a/k/a "Venao" with the intent to prevent Bernardo Gonzalez, a/k/a "Venao" from communicating to a law enforcement officer or a judge of the United States information relating to the commission of federal offenses by Salvador Magluta, a/k/a "Sal" and August Falcon, a/k/a Willy . . ." The conviction of Ramirez has been affirmed by the Eleventh Circuit. The cause is back before this Court on Ramirez's application for relief pursuant to 28 U.S.C. §2255, which had been previously denied. Following several appeals from this Court's rulings, the cause is back before this Court for a determination of the two issues set forth in the Eleventh Circuit's opinion dated February 18, 2009, specifically dealing with the issue of whether petitioner was prejudiced by her counsel's deficient performance.

Petitioner claims that had she known and been advised by her attorney that the indictment charged her with first-degree murder, a capital offense, she would have accepted the government's plea offer upon the advice of her attorney. Thus, an examination of the underlying facts in this cause is necessary to determine whether the petitioner, in fact, was aware that Count 3 of the Indictment would carry a sentence of life imprisonment if she was convicted.

2

Petitioner has claimed and does claim that she would have done whatever counsel advised, including the entry of a plea of guilty. Such assertion is supported by counsel's affidavit. However, counsel's advice to petitioner was based upon his erroneous belief that she would face, at most, ten years imprisonment if convicted and would not face a possible sentence of life imprisonment.

Prior to trial, the petitioner moved to dismiss Count 3 on the belief that it alleged a non-capital offense and was therefore barred by the five-year Statute of Limitations. This motion was denied based upon a finding that Count 3 charged a capital offense. Based upon such ruling, both the petitioner and her counsel were aware of the potential for a sentence of life imprisonment in the event she was convicted on such charge.

Petitioner and her attorney persisted in their claim that Count 3 charged manslaughter since a capital charge required allegations of "premeditation" or "malice aforethought" which were claimed to be essential elements of a first degree murder charge. The defense, based upon such belief, advised the petitioner that the indictment only charged manslaughter, a non-capital offense, and was barred by the Statute of Limitations of five years.

A determination was made by petitioner's counsel that following the swearing in of the jury, he would file a Motion for Judgment of Acquittal based upon the Statute of Limitations of five years for a non-capital offense. Counsel also advised the petitioner that if such motion failed she would be facing, at most, a sentence of ten years for manslaughter. Such motion was deemed by the Court to be a Motion to Dismiss pursuant to Fed.R.Crim.P. 12(b)(2) and denied as untimely.[2] Following the trial, the petitioner was found guilty of Count 3 in the Indictment.

---

[2]This ruling was affirmed *per curiam* by the Eleventh Circuit. *United States v. Ramirez,* 324 F.3d 1225, 1228-29 (11th Cir. 2003).

3

From the transcripts of hearings held before the Court, it is apparent to the undersigned that the petitioner, throughout the pertinent portions of these proceedings, was always aware of her exposure to a sentence of life imprisonment if convicted on Count 3. For example, at a Status Conference held on September 20, 2001, which was attended by the petitioner and her counsel, petitioner's attorney told the Court that his client was facing a sentence of mandatory life imprisonment. At the hearing before the undersigned on May 26, 2009, defense counsel stated that he knew that there was a risk of life imprisonment and that the petitioner was present.[3] The transcript of such hearing reveals the following, found at page 55:

> Q. So, by that point you had told the court in a pleading three separate times that your client faced mandatory life imprisonment, and you told the court in open court on September 20th, 2001, that your client faced mandatory life imprisonment, correct?
>
> A. Yes.
>
> Q. Your client was with you, then, when you made the statement?
>
> A. On that day, September 20th?
>
> Q. Yes.
>
> A. Yes.

Although the record is silent regarding counsel's discussions with the petitioner regarding sentence possibilities, the undersigned finds it difficult to accept the fact that counsel did not advise the petitioner of a strong likelihood of a sentence of life imprisonment upon conviction. The petitioner, present at several pre-trial hearings, heard on several occasions that her counsel knew of the possibility of life imprisonment. Further, following the denial of the pre-trial Motion to Dismiss, the petitioner was certainly aware of the possibility of a life sentence upon conviction of the charge

---

[3]Transcript of hearing held on May 26, 2009, at pages 54 and 55.

in Count 3. Accordingly, the Court finds that the defendant knew of the likelihood of a term of life imprisonment upon conviction of Count 3.

Prior to the trial and following hearings referred to above, the government offered the petitioner a plea to a sentence of five years to a conspiracy count pursuant to 18 U.S.C. §371. Following discussions with the petitioner, and based upon his erroneous belief that the argument on the Statute of Limitations would prevail but, even if unsuccessful, she would face a maximum of ten years, he advised the petitioner to reject the plea offer and go to trial. She did reject the plea offer. Her belief throughout these proceedings was that she was not guilty of the offense set forth in Count 3 and still maintains such belief. Subsequently, the petitioner and co-defendants were offered a package plea offer requiring each to plead guilty to a charge that would impose a ten-year sentence. No response to such offer was made by the petitioner.

During the course of the hearing, the government attorney, with the consent of the defense, proffered testimony that would be given by Assistant U.S. Attorney Michael Patrick Sullivan, who was one of the trial attorneys assigned to the trial of this cause. The following *inter alia* was stated into the record by the government attorney:

> "Mr. Sullivan would testify that he had a hallway conversation with Mr. Cahn before, shortly before or shortly after a status conference in this matter in September of 2001. He would testify that during the status conference he chided Mr. Cahn about not being able to get his client to accept the plea offer. He would testify that Mr. Cahn responded in substance: 'You can lead a horse to water, but you can't make them drink.'"[4]

The government's cross-examination of Mr. Cahn regarding the Sullivan conversation revealed the following:

---

[4]Transcript of May 26, 2009 hearing at page 118.

5

Q. Prior to trial, after your client had rejected the plea offer, you had discussion with Mr. Sullivan outside of the court in which you discussed your client's position to reject the plea offer. Do you remember having a discussion with Mr. Sullivan?

A. I had lots of discussions with Mr. Sullivan. He was one of the more approachable members, and we talked and joked about lots of things over the course of — even in trial when it was heated, things were never heated up with Pat.

\* \* \* \*

Q. It was a conversation that took place outside of the court on the date of one of these status conferences prior to trial. And isn't it true that when Mr. Sullivan asked or Mr. Sullivan chided you about not convincing your client to take the plea, you responded by saying "You can lead a horse to water but you can't make them drink."

A. It's possible.

Q. Well, did you say it?

A. I don't have any recollection of it. It sounds like the sort of thing I would say, because, generally, I want to avoid conflicts with prosecutors I have cases with. But I don't have - - I don't have a recollection of saying that.

Q. So you don't deny saying that?

A. No, I don't deny saying it. I just don't remember it.

The only logical inference to be drawn from such statement by Mr. Cahn is that he tried to get the petitioner to accept the plea offer made by the government but she was unwilling to do so.

The defense, being confident in its ability to prevail upon either the statute of limitations defense or the lack of necessary language in the indictment regarding the offense of first degree murder, decided to go to trial, notwithstanding the fact that defense counsel knew that his client would be exposed to a sentence of life imprisonment upon conviction and after a failure to prevail on the asserted defenses. Once jeopardy had attached, the defense again raised by a Joint Motion for Judgment of Acquittal, its statute of limitations and indictment flaws. The Court treated such motion as a Motion to Dismiss and denied it as untimely. Such ruling was affirmed on appeal.

It appears to the Court that the petitioner, being aware through court proceedings that she could receive a sentence of life imprisonment if convicted, nonetheless decided to proceed to trial. The result was a conviction for the offense charged in Count 3 of the Indictment, for which she received a sentence of imprisonment for life.

It is difficult, if not impossible, for the undersigned to accept the fact that Mr. Cahn was not fully aware of the possibility of life imprisonment after having received the Court's ruling denying his various pre-trial motions regarding the Statute of Limitations and the insufficiency of the language of the Indictment. The Court therefore concludes that defense counsel was firm in his erroneous belief that he would obtain an acquittal or that the defendant, at most, would receive a ten year sentence, thus giving rise to his advice to the petitioner to reject the plea offers.

The Court is also convinced that the petitioner, believing in her innocence of the charge pending against her and the likelihood of acquittals or a maximum sentence of ten years, would not have entered a plea of guilty either to the indictment or to the plea offers, even upon advice of counsel.

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, consideration of the submissions of the parties, testimony presented, and argument of counsel, the undersigned respectfully

RECOMMENDS that the Court find as follows:

1. That the petitioner Ramirez, even upon advice of counsel, would not have pled guilty to the charge set forth in Count 3 of the Indictment or accepted the plea offers of the government.

2. That counsel, aware of the possibility of a life sentence if convicted on the charge in Count 3, but strong in his belief that he would prevail on his Motion for Acquittal or at the trial, would not have advised the petitioner Ramirez to enter a guilty plea either to the Indictment or plea offers.

The parties have ten (10) days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Joan A. Lenard. See 28 U.S.C. §636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 24th day of June, 2009.

BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE